IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN HILL,** | : | CIVIL ACTION NO. 1:23-CV-1507 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **SOUTH EASTERN SCHOOL DISTRICT and ZANE S. FAKE,** | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Brian Hill brings this lawsuit under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Fourth Amendment to the United States Constitution by way of 42 U.S.C. § 1983 against his current employer, South Eastern School District ("SESD"), and his supervisor, school principal Zane S. Fake.  Hill claims SESD created a hostile work environment and retaliated against him, and that both SESD and Fake unlawfully searched and seized his medical records.  Defendants move to dismiss Hill's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim.  We will grant in part and deny in part defendants' motion.

I. **Factual Background & Procedural History**

A. **Hill's Employment at SESD**

Hill has been a public-school teacher at SESD's Fawn Area Elementary School in York County, Pennsylvania, since at least 2018.[1] (See Doc. 1 ¶¶ 3, 7); see also South Eastern School District, *Buildings Information*, https://www.sesdweb.net/about/buildings_information (last visited May 6, 2024). During the 2022 and 2023 school years, Hill and his colleague, Lori Brinck,[2] co-taught a group of about 40 third-grade students. (See Doc. 1 ¶¶ 9, 11, 22, 35).

The allegations in Hill's complaint largely derive from the actions and inactions of school officials after a new student joined Hill's classroom in December 2021. (See id. ¶¶ 9-10). According to Hill, the student was disabled, had behavioral issues, and regularly disrupted the class. (See id.) Hill claims he and Brinck "did everything they could do to support the student," including seeking assistance from Fake and the school counselor, Bobbi Gross. (See id. ¶¶ 10-12, 17-20, 84). Despite their entreaties, Hill and Brinck did not receive any classroom support. (See id. ¶ 12). Brinck was compelled to act as the disabled student's personal care assistant for the remainder of the academic year while Hill taught the class on his own. (See id.)

---

[1] In his opposition brief, Hill states he started working for SESD in 2006. (Compare Doc. 1 ¶ 7, with Doc. 18 at 1).

[2] Brinck brought a similar lawsuit raising virtually identical claims against SESD and Fake. See Brinck v. S.E. Sch. Dist., No. 1:23-CV-1508, Doc. 1 (M.D. Pa. Sept. 12, 2023).

2

### B. The 2022 and 2023 School Years

Hill asserts that, after he complained to the administration about Gross's lack of support for the student, Fake engaged in a systematic effort to undermine and intimidate him. (See id. ¶¶ 13, 16). Fake met with Hill, Brinck, and another teacher on April 6, 2022, during which Fake purportedly discussed the teachers' "mental health" and said he "and other teachers had noticed they were angry and depressed." (See id. ¶¶ 15, 78). Fake also attended meetings that Hill and Brinck held with the disabled student, but deliberately "remain[ed] uninvolved." (See id. ¶ 17). He did not take any remedial actions to help Hill maintain control of his classroom. (See id. ¶¶ 17-18). In September 2022, Fake decided that third-grade teachers were no longer allowed to complete student performance measures. (See id. ¶ 22). Two months later, Fake refused to provide Hill and Brinck with funds or staffing support for their after-school social-emotional club, even though Fake had encouraged them to start the club. (See id. ¶¶ 23-31).

Hill states the harassment he suffered continued into early 2023, when Fake prohibited Hill—but no other teachers—from holding morning recess, causing "a rise in bad behavior." (See id. ¶¶ 32-33). On February 2, 2023, Hill sent a homeless student to Fake's office because the student threw Lincoln Logs at another child. (See id. ¶¶ 36-37). When Hill determined that Fake and Gross were unavailable, he took the initiative to talk to the homeless student about, *inter alia*, "making good choices with his life." (See id. ¶¶ 37-38). Shortly thereafter, Gross allegedly informed Hill the student's mom had complained that Hill "called her son a liar, a thief, and a cheat"; Gross went so far as to express her concern to Hill that the

3

student may be suicidal as a result of Hill's handling of the matter. (See id. ¶¶ 40-41). Gross also reported the incident to Fake, who then attempted to hold a fact-finding meeting with Hill before postponing the meeting at Hill's request. (See id. ¶¶ 42-43).

The meeting eventually was held on February 10, 2023. (See id. ¶ 45). Attendees included Hill, Fake, Tracey Kerr (a Human Resources representative), Caryn Jones (a teacher who agreed to act as Hill's notetaker),[3] and Loralie Harpster (a fourth-grade teacher who attended over Hill's objection and served as Fake's notetaker). (See id. ¶¶ 43, 45-47, 54). Hill claims Fake reprimanded him during the meeting, intimidated him, and sullied his professional reputation. (See id. ¶¶ 45-46). Fake also allegedly required Hill to attend a second disciplinary meeting at the end of February, which interfered with his end-of-day prep time. (See id. ¶ 48). Hill avers that Fake continued to harass him throughout the spring semester by (1) nullifying Hill's award system for students, causing students and parents to complain; (2) scolding Hill and Brinck for walking with students in the hallway; and (3) terminating students' learning support services a month early, upsetting at least one parent. (See id. ¶¶ 49-50, 52-53, 55).

---

[3] Hill had asked a different teacher, Kim Smith, to serve as his notetaker, but Smith refused to "get involved." (See Doc. 1 ¶ 45). Hill believes Fake told Smith about the purpose of the meeting ahead of time and dissuaded her from attending by disclosing Hill's mental health issues. (See id.)

4

### C. End of the 2023 School Year

As the school year ended, Fake informed Hill he was being moved to the fourth grade so that he could continue teaching his students at the next grade level. (See id. ¶ 54). Hill requested to stay in his current position, noting that his switch to a fourth-grade teacher position was not administratively necessary. (See id. ¶ 56). Fake denied this request. (See id. ¶ 57). Hill asserts Fake's rationale for his move was pretextual: by moving him to fourth grade, Fake could "surveil" Hill via Harpster. (See id. ¶ 54). Shortly after this shakeup, Hill says he saw a poster in the school lobby depicting Fake holding a security camera with the words "I've got my EYES on you." (See id. ¶ 59) (emphasis in original). Hill perceived this poster as a very specific, and targeted, effort to intimidate him. (See id.)

On May 31, 2023, Hill received his annual performance evaluation from Fake. (See id. ¶ 60). According to the complaint, Hill received an unsatisfactory score for the year, primarily because of Hill's purported mishandling of the incident involving a homeless student in February 2023. (See id.)[4] Hill asserts that this was the first time he received a below-satisfactory score. (See id. ¶¶ 7, 60). Hill claims that Fake sought "to undermine his position and force him from his job" because of

---

[4] Hill states that "[Fake] was going to give [him] a 1 [even though Hill] should have earned a 2 in Domain 4." (See Doc. 1 ¶ 60). "Domain 4" appears to be a reference to the Professional Responsibilities portion of the end-of-year assessment. See Standards Aligned System, *Educator Effectiveness*, https://www.pdesas.org/ EducatorFrameworks/EducatorEffectiveness/#frameworkSetStatements (last visited May 6, 2024) (citing Charlotte Danielson, *The Framework for Teaching* (2011 Edition) https://static.pdesas.org/content/documents/PDE%20-%20Teacher %20Evaluation%20Pilot%20II%20Rubric.pdf).

his disabilities and advocacy for disabled students.  (See id. ¶¶ 60, 79, 86-87).  He filed a grievance against Fake for violating the collective bargaining agreement, which Fake denied.  (See id. ¶ 61).

Hill then met with the school superintendent, Dr. Nathan Van Deusen, in June 2023.  (See id. ¶ 63).  Dr. Van Deusen agreed that Harpster should not have attended the February 2023 meeting over Hill's objection.  (See id.)  Hill informed Dr. Van Deusen that Fake never gave him any evidence justifying his reprimand.  (See id.)  He also expressed concerns about being evaluated by Fake; Hill called him a "proven liar" and shared a few examples of Fake's purported mistruths.  (See id. ¶¶ 63-65).  Dr. Van Deusen responded by informing Hill that he still had to move to the fourth grade and that everyone needed to sit down together and work through these issues.  (See id. ¶ 65).  Hill then asked how that approach would ameliorate his "anxiety and bed wetting," recent medical diagnoses he attributed to Fake.  (See id. ¶ 66; see also id. ¶ 62).  At the conclusion of the meeting, Hill submitted his rebuttal and interview notes, which Dr. Van Deusen placed in Hill's personnel file.  (See id. ¶ 66).  Hill blames SESD for failing to take prompt remedial action and contends that the hostile work environment is ongoing.  (See id. ¶¶ 68, 80).[5]

**D.     Procedural History**

Hill filed his complaint on September 12, 2023.  He raises three distinct claims: hostile work environment against SESD, (Counts I), retaliation against

---

[5] Hill also claims his colleagues continue to harass him during trainings, referencing an anonymous survey "mentioning [his] name and an improvement plan," but he does not allege who sent it or why it was sent.  (See Doc. 1 ¶ 67).

SESD, (Count II), and unlawful search and seizure against both SESD and Fake, (Count III). Hill seeks compensatory damages on all counts for pain, suffering, and humiliation, as well as punitive damages against Fake on Count III. Defendants move to dismiss the complaint for failing to state a claim. The motion is fully briefed and ripe for disposition.

## II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal

7

conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Hill alleges SESD violated the Rehabilitation Act by harassing him based on his disability and by retaliating against him for advocating on behalf of disabled students. He also brings a claim under Section 1983, alleging both SESD and Fake violated his Fourth Amendment right to be free from unreasonable searches and seizures. Defendants challenge the sufficiency of the pleadings on all three counts. Fake also raises a qualified immunity defense. We address these claims *seriatim*.

### A. Rehabilitation Act Claims

The Rehabilitation Act ensures that the "'remedies, procedures and rights' set forth in Title VI of the Civil Rights Act of 1964 [are] available to those whose substantive rights under Section 504 of the Rehabilitation Act are violated." See Fowler, 578 F.3d at 206 n.2 (quoting 29 U.S.C. § 794(a)(2)). Section 504, in turn, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any federally funded program. See 29 U.S.C. § 794(a). When assessing whether an employer has violated

8

the Rehabilitation Act, we apply the same standards applicable to complaints alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq*.  See 29 U.S.C. § 794(d); accord Gibbs v. City of Pittsburgh, 989 F.3d 226, 229 (3d Cir. 2021) ("The 'substantive standards for determining liability under the ADA and Rehabilitation Act are the same.'") (quoting McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d Cir. 1995)) (brackets omitted); Berardelli v. Allied Servs. Inst. of Rehab. Med. 900 F.3d 104, 117 (3d Cir. 2018) (noting that ADA and Rehabilitation Act claims often are addressed "in the same breath"); see also Fowler v. AT&T, Inc., 19 F.4th 292, 298 (3d Cir. 2021) (noting that claims under the ADA align with claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., and looking to Title VII caselaw to evaluate ADA claims) (citations omitted).

   1. ***Hostile Work Environment***

Hill's first claim is that SESD fostered a hostile work environment.  To state a claim for hostile work environment under the Rehabilitation Act, a plaintiff must allege (1) he is a "qualified individual with a disability," (2) he suffered "unwelcome harassment" due to his disability, (3) the harassment was "sufficiently severe or pervasive to alter the conditions of [his] employment," and (4) the employer "knew or should have known of the harassment and failed to take prompt effective remedial action."  See Walton v. Mental Health Ass'n of S.E. Pa., 168 F.3d 661, 667 (3d Cir. 1999); see also Kendrell v. Sec'y U.S. Dep't of Def., 851 F. App'x 317, 321 (3d

9

Cir. 2021) (*per curiam*) (nonprecedential)[6] (citing Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017)).  Hill's allegations fail on the first element.

Hill asserts he is a qualified individual with a disability due to his anxiety, depression, and bedwetting.  (See Doc. 1 ¶ 72).  To be considered disabled under the Rehabilitation Act, a plaintiff must have (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) they must be "regarded as having such an impairment."  See 42 U.S.C. § 12102(1); see also 29 U.S.C. § 705(9)(B).  Congress amended the ADA in 2008 to emphasize that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  See 42 U.S.C. § 12102(4)(A).

As an initial matter, the complaint contains no facts from which we may infer Hill's asserted disabilities satisfy the first or second alternative qualifying conditions under the Act.  A plaintiff proceeding under either of the first two conditions must allege that their impairment "substantially limits" a major life activity.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

---

[6] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  However, we cite these nonprecedential decisions because we have carefully considered the decisions and we are persuaded by each panel's *ratio decidendi*.

thinking, communicating, and working." See 42 U.S.C. § 12102(2)(A); see also id. § 12102(2)(B). Throughout the complaint, Hill makes a single conclusory allegation that he is a qualified individual with a disability because of his anxiety, depression, and bedwetting, for which he has sought medical care. (See Doc. 1 ¶ 72). But he does not allege how these disabilities impact his daily life, performance at work, or any other activities. Nor does he offer any supporting argument in this regard in his opposition brief. (See Doc. 18 at 10-11). We find that Hill has not plausibly alleged his disabilities substantially limit a major life activity or that he has a record of such an impairment.

With respect to the third statutory condition, our court of appeals has held that "[a]n employer regards a person as disabled when it misinterpret[s] information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements." See Eshleman v. Patrick Indus., Inc., 961 F.3d 242, 245 (3d Cir. 2020) (citations and internal quotation marks omitted). A plaintiff must plausibly allege that their employer engaged in actions prohibited by the ADA *because of* the employee's actual or perceived impairment even if the impairment does not in fact limit a major life activity. See id. (citing 42 U.S.C. § 12102(3)(A)). Hill argues that "it may be inferred that Fake perceived [Hill] as mentally disabled." (See Doc. 18 at 10). He claims Fake commented during an April 2022 meeting that he and others noticed Hill (and two other teachers) were "depressed," (see Doc. 1 ¶¶ 14, 15, 72), that Fake disclosed his "mental health issues" and "health and personal information" to others, (see id. ¶¶ 45-47), and that Hill informed Dr. Van Deusen in June 2023 that Fake caused his "diagnosis of

11

anxiety and bed wetting condition," (see id. ¶ 66). Hill also avers, in conclusory fashion, that SESD harassed him "after he gave notice of his anxiety." (See id. ¶ 73).

Taking his allegations as true as required in the context of the pending motion to dismiss, Hill experienced physical and mental impairments during his employment, and his employer eventually became aware of these impairments. But none of Hill's allegations supports a reasonable inference that representatives of SESD perceived him to be "incapable of performing" the functions of a public-school teacher *because of* his disabilities. See Eshleman, 961 F.3d at 245 (citations omitted). To the contrary, Hill alleges that Fake reassigned him to teach fourth grade, demonstrating that Fake believed Hill to be capable of performing the essential functions of his job. (See Doc. 1 ¶¶ 54, 65). We find that Hill has not plausibly alleged SESD regarded him as disabled. We will grant defendants' motion to dismiss Hill's hostile work environment claim without prejudice.

### 2.  *Retaliation*

Hill also brings a retaliation claim against SESD. To establish a *prima facie* case for retaliation, a plaintiff must allege (1) he engaged in a protected activity; (2) the employer took adverse action against him; and (3) there is a causal connection between the protected activity and the adverse action. See Krouse

v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997) (citations omitted).[7] Conduct constitutes a protected activity "if it involves a facially valid complaint of discrimination or retaliation in violation of the ADA or Rehabilitation Act."  See Kendall v. Postmaster Gen. of U.S., 543 F. App'x 141, 145 (3d Cir. 2013) (nonprecedential) (citing Slagle v. County of Clarion, 435 F.3d 262, 267-68 (3d Cir. 2006)); see also 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this [Act] . . . ."). A plaintiff generally can show a causal link between his protected activity and an employer's adverse action by alleging either "(1) an unusually suggestive temporal proximity between" the two events, or "(2) a pattern of antagonism coupled with timing." See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Krouse, 126 F.3d at 503-04). The complaint adequately alleges a *prima facie* claim of retaliation.

### a. Protected Activity

In the matter *sub judice*, Hill has sufficiently alleged he engaged in a protected activity. Hill avers that he began advocating for disabled and homeless students as early as December 2021. (See Doc 1 ¶¶ 11, 13). He specifically contends that he and Brinck notified administrators that the school district was not providing those students with adequate academic and emotional support. (See id. ¶¶ 13, 58,

---

[7] A properly alleged *prima facie* case will defeat a motion to dismiss, but it is not required. See Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (citations omitted). A plaintiff's allegations need only "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." See id. (quoting Fowler, 578 F.3d at 213).

13

65, 84-85). Viewing the facts in a light most favorable to Hill, his purported advocacy constitutes an informal complaint against or opposition to disability discrimination. See Kendall, 543 F. App'x at 145 (citing Slagle, 435 F.3d at 267-68).

### b. Adverse Action

Hill also has plausibly alleged that his employer responded adversely to his advocacy. Under this prong, a plaintiff must allege their employer reacted to protected activity "by taking 'materially adverse' actions that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" See Moore v. City of Philadelphia, 461 F.3d 331, 346 (3d Cir. 2006) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). As the Supreme Court has made clear, however, civil rights laws were not intended to create "a general civility code for the American workplace." See Burlington, 548 U.S. at 68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). For that reason, materially adverse actions do not include "those petty slights or minor annoyances that often take place at work and that all employees experience." See Moore, 461 F.3d at 346 (quoting Burlington, 548 U.S. at 68).

The allegations before us surpass trivial grievances. Hill claims that shortly after he advocated for disabled students and opposed SESD's discrimination, school officials retaliated against him by, *inter alia*: (1) wrongfully disseminating his medical information, (2) reprimanding him without cause and threatening to terminate him, (3) reassigning him to a different grade level without administrative need or purpose, and (4) negatively rating him on an end-of-year performance evaluation. (See Doc. 1 ¶¶ 23-28, 32-33, 54, 56-57, 60, 86, 91). Formal reprimands

14

and threats of termination are quintessential adverse employment actions. See Barnees v. Nationwide Mut. Ins. Co., 598 F. App'x 86, 90 (3d Cir. 2015) (nonprecedential). These allegations, if true, likely would dissuade a reasonable employee from rocking the boat by lodging or supporting charges of discrimination against well-connected peers or upper-level administrators with supervisory authority. See Moore, 461 F.3d at 346 (quoting Burlington, 548 U.S. at 68). Accordingly, they suffice to establish the second element of Hill's retaliation claim.

### c. Causal Nexus

Lastly, Hill's allegations plausibly set forth a causal nexus between his protected activity and the adverse actions attributable to his employer. Hill contends Fake "targeted and harassed" him because he opposed being retaliated against for his advocacy on behalf of disabled students. (See Doc. 1 ¶ 32). He allegedly began experiencing various adverse actions at work immediately after advocating for a disabled student in December 2021. (See id. ¶¶ 9-13). Those actions then continued for over a year and a half. (See id. ¶¶ 60-61, 68). At this procedural juncture, we find that Hill has sufficiently alleged causation by identifying "a pattern of antagonism coupled with timing." See Lauren, 480 F.3d at 267 (citing Krouse, 126 F.3d at 503-04). We will deny defendants' motion as to this claim.

### B. Section 1983 Claims – Fourth Amendment

Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. See 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights

15

otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under Section 1983, a plaintiff must show deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  See Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  A public school district is a state actor for purposes of Section 1983, and its administrators and employees may be considered state actors if their decisions reflect official district policy.  See E.N. v. Susquehanna Twp. Sch. Dist., No. 1:09-CV-1727, 2010 WL 4853700, at *5 (M.D. Pa. Nov. 23, 2010) (Conner, J.) (citing, *inter alia*, New Jersey v. T.L.O., 469 U.S. 325, 336 (1985); Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 736 (1989)); accord Est. of Massey v. City of Philadelphia, 118 F. Supp. 3d 679, 687 (E.D. Pa. 2015) ("[I]t is undisputed that a public school district and its employees, including the school principal, are state actors.") (citations omitted).

    1.    ***Individual Liability***

Hill alleges Fake violated his Fourth Amendment rights by unreasonably searching and seizing his medical records.  (See Doc. 1 (Count III)).  The Fourth Amendment, applicable to the states through the Fourteenth Amendment, see Wolf v. Colorado, 338 U.S. 25, 27-28 (1949), protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," see U.S. CONST. amend. IV.  The Supreme Court has stated that the amendment's primary purpose is "to protect personal privacy and dignity against unwarranted intrusion by the state."  See Ingraham v. Wright, 430 U.S. 651, 673 n.42

16

(1977) (quoting Schmerber v. California, 383 U.S. 757, 767 (1966)). Our court of appeals has further held that "the Fourth Amendment affords employees a reasonable expectation of privacy in the content of certain work-related communications and files." See Walker v. Coffey, 905 F.3d 138, 148 (3rd Cir. 2018). Notwithstanding those rights, public employers may search an employee's "files or communications" without a warrant "if the search is 'conducted for a noninvestigatory, work-related purpos[e] or for the investigatio[n] of work-related misconduct.'" See id. (quoting City of Ontario v. Quon, 560 U.S. 746, 761 (2010)).

In the instant case, Hill's Fourth Amendment claim against Fake is inartfully pled. The complaint is devoid of allegations regarding when or how a search or seizure occurred. In his supporting brief, Hill attempts to salvage this claim by declaring "it may be inferred . . . that Fake and potentially others may have accessed [his] personnel or medical information" based on Fake's offhand remark that Hill seemed "angry and depressed." (See Doc. 18 at 13; see also Doc 1 ¶ 15). Such an inference is unwarranted on the meager allegations before us. Hill has failed to put forth sufficient factual averments demonstrating how or when a search or seizure of his medical records occurred, and, if one did occur, that it was not for a

work-related purpose. See Walker, 905 F.3d at 148 (citation omitted). We will grant defendants' motion to dismiss this claim without prejudice.[8]

### 2. *Municipal Liability*

In his final claim, Hill contends SESD also is liable for violating his Fourth Amendment rights. (See Doc. 1 (Count III)). The Supreme Court has consistently held that municipalities and other local government entities may not be held liable in a Section 1983 suit for the conduct of their employees under a theory of *respondeat superior* liability. See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); see also Colburn v. Upper Darby Township, 946 F.2d 1017, 1027 (3d Cir. 1991). Municipal liability only arises when a government body causes an employee to violate another's constitutional rights through an official policy or custom. See Monell, 436 U.S. at 690-94; see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). Policies and customs may be inferred when a municipality acts with deliberate indifference toward known or obvious risks that improperly trained employees will violate the rights of people with whom they interact. See Connick

---

[8] Fake also asserts a defense of qualified immunity. (See Doc. 17 at 12-14). A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, viewing the facts alleged in a light most favorable to the plaintiff, the defendant violated a constitutional right and, if so, whether that right was "clearly established" at the time of the alleged violation. See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). Here, we begin and end our analysis with the first prong because Hill has failed to sufficiently allege a violation of his constitutional rights. Absent a plausible averment, Fake would be entitled to qualified immunity. However, in light of the opportunity for amendment as set forth in our accompanying order, we will defer ruling on the availability of qualified immunity.

v. Thompson, 563 U.S. 51, 61-62 (2011); see also Vargas v. City of Philadelphia, 783 F.3d 962, 974 (3d Cir. 2015).

Hill's municipal liability claim against SESD fails because he has not plausibly alleged a violation of his Fourth Amendment rights. See Montgomery, 159 F.3d at 126. The complaint includes one conclusory reference to SESD's supposedly "illegal policies, or customs, or lack thereof." (See Doc. 1 ¶ 91). Hill otherwise expressly alleges that SESD is liable on a theory of *respondeat superior*. (See id. ¶ 70). He does not claim SESD issued an official "proclamation, policy[,] or edict" directing school officials to unlawfully search and seize teachers' medical records, see Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (citation omitted), nor has he "plausibly alleged a 'pattern' of known constitutional violations amounting to an unofficial custom," see Eberhardinger v. City of York, No. 1:16-CV-2481, 2017 WL 4167642, at *4-5 (M.D. Pa. Sept. 20, 2017) (Conner, C.J.) (citation omitted). We will grant defendants' motion to dismiss this claim without prejudice.

### C.   Leave to Amend

Courts generally must grant leave to amend if a curative amendment is conceivable. See Phillips, 515 F.3d at 245. Hill requests an opportunity to file an amended complaint, (see Doc. 18 at 14), and we note that many of the deficiencies identified herein are factual and potentially curable. Accordingly, we will grant Hill leave to amend consistent with this memorandum.

**IV.     Conclusion**

We will grant in part and deny in part defendants' motion to dismiss Hill's complaint without prejudice.  An appropriate order shall issue.

                                                            /S/ CHRISTOPHER C. CONNER  
                                                            Christopher C. Conner  
                                                            United States District Judge  
                                                            Middle District of Pennsylvania

Dated:     May 17, 2024